## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| PRINTERS ROW, LLC., | ) | The Honorable Eugene R. Wedoff |
| | ) | Case No. 08-17301 |
| Debtor. | ) | |
| | ) | Hearing Date: November 4, 2008 at 10:00 a.m. |

### FINAL ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE: (I) AUTHORIZING INCURRENCE BY THE DEBTOR OF POST- PETITION SECURED INDEBTEDNESS WITH LIMITED ADMINISTRATIVE SUPERPRIORITY, (II) GRANTING LIENS, AND (III) MODIFYING THE AUTOMATIC STAY

This matter having come before this Court upon the motion (the "DIP Motion") by Printers Row, LLC (the "Debtor"), as a debtor and debtor-in-possession in the above captioned chapter 11 case (the "Case") seeking, among other things, entry of a final order (this "Final Order") authorizing the Debtor to:

(i)      Obtain credit and incur debt, pursuant to Sections 105, 361, 362, 363, and 364(c) of the Bankruptcy Code, on an final basis for a period (the "Final Period") from the entry of the Final Order through and including the Termination Date (as defined in Paragraph 11, below), up to the aggregate committed amount of Six Million Five Hundred Thousand and no/100 dollars ($6,500,000.00) (on terms and conditions more fully described herein) secured by valid, perfected, and enforceable liens (as defined in Section 101(37) of Chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code") on property of the Debtor's estate pursuant to section 364(c)(2) of the Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

1

(ii)    Establish that certain financing arrangement (the "DIP Facility") pursuant to (i) that DIP Loan Agreement by and among Printers Row, LLC, as borrower (the "Borrower") and Accelerated Assets, LLC, as lender (the "DIP Lender"), substantially in the form filed of record in the Case and attached as Exhibit A to the DIP Motion, and (ii) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, a Term Note (the "Term Note"), a Revolving Note (the "Revolving Note"), a Collateral Assignment of Installment Agreement (the "Assignment"), Uniform Commercial Code ("UCC") financing statements, and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, the "DIP Loan Agreement"), [1] under and as defined in the DIP Loan Agreement consisting of a term loan (the "Term Loan") and a revolving credit loan (the "Revolving Loan") (collectively, the "DIP Obligations");

(iii)    Authorize the use of the proceeds of the DIP Facility in each case in a manner consistent with the terms and conditions of the DIP Loan Agreement, as follows:  in the case of the Term Loan, the proceeds of the DIP Facility shall be used solely to pay down the amount due under, and to restructure, that certain Amended and Restated Installment Agreement to Purchase Hotel dated October 1, 2008 by and between MHJV, L.L.C., as seller ("MHJV"), and Debtor, as purchaser (the "Installment Agreement"); and in the case of the Revolving Loan, the proceeds of the DIP Facility shall be used solely to fund costs related to the continuing

---

[1] Except as otherwise defined herein, all defined terms used herein shall have the meanings ascribed thereto in the DIP Loan Agreement.

2

operations of the Blake Hotel, a 162-room hotel in Chicago, Illinois operated by the Debtor (the "Hotel") consistent with the budget attached hereto as Exhibit A (the "Budget").

(iv)    Grant, pursuant to section 364(c)(2) of the Bankruptcy Code, to the DIP Lender a valid, perfected, and enforceable lien, subject only to the Carve Out (as defined below), upon all of the Debtor's unencumbered real and personal property as provided in and as contemplated by this Final Order, the DIP Facility, and the DIP Loan Agreement;

(v)     Grant, pursuant to Section 364(c)(1) of the Bankruptcy Code, to the DIP Lender (for the benefit of the DIP Lender) superpriority administrative claim status in respect of all DIP Obligations, subject to the Carve Out (as defined below), as provided herein;

(vi)    Vacate and modify the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Agreement and this Final Order; and

(vii)   Waive the ten (10) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h).

The Bankruptcy Court having considered the DIP Motion, the DIP Facility, the DIP Loan Agreement, the evidence submitted at the hearing (the "Interim Hearing") on that certain interim financing order entered on October 14, 2008 (the "Interim Order"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), due and proper notice of the DIP Motion and the hearing on the Final Order (the "Final Hearing") having been given; a Final Hearing having been held and concluded on November 4, 2008; and it appearing that approval of the final relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtor and

3

otherwise is fair and reasonable and in the best interests of the Debtor, its creditors, its estate, and its equity holders, and is essential for the continued operation of the Debtor's business; and it further appearing that the Debtor is unable to secure unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code Section 503(b)(1); and there is adequate protection of the interests of MHJV in the Installment Agreement and of the other creditors holding liens against the Installment Agreement on which the Assignment is to be granted; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING BY THE DEBTOR, THE BANKRUPTCY COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.   **Petition Date**.  On July 3, 2008 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Northern District of Illinois. The Debtor has continued in the management and operation of its business and property as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case and no official committee of unsecured creditors has been formed in this Case.

B.   **Jurisdiction and Venue**.  This Court has jurisdiction over this proceeding, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the parties and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Case and proceeding on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   **Notice**.  The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2. Notice of the Final Hearing and the relief

4

requested in the DIP Motion has been provided by The Garden City Group, the Debtor's claims
and noticing agent, in accordance with paragraph 18(b) of the Interim Order, whether by first
class mail, facsimile, email, overnight courier, or hand delivery, to certain parties in interest,
including: (i) the parties having been given notice of the Interim Hearing; (ii) any party which
has filed a request for notices with this Court; (iii) the creditors holding the twenty (20) largest
claims as set forth in the list of creditors filed in this Case; (iv) the United States Trustee; (v) the
Lien Claimants; (vi) the DIP Lender; and (vii) any other known parties in interest.  Under the
circumstances, such notice of the Final Hearing and the relief requested in the DIP Motion is due
and sufficient notice and complies with sections 102(1), and 364(c) of the Bankruptcy Code,
Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014, and the Local Rules.

   D. **Debtor's Acknowledgement and Agreement**.  Without prejudice to the rights of
parties in interest as set forth in paragraph 6 below, the Debtor admits, stipulates, and
acknowledges that (collectively, paragraphs D and E hereof shall be referred to herein as the
"Debtor's Stipulations") in entering into the DIP Loan Agreement, and as consideration therefor,
the Debtor hereby agrees that until such time as all DIP Obligations have been indefeasibly paid
in full in cash and the DIP Loan Agreement has been terminated in accordance with the terms
thereof, the Debtor shall not in any way prime or seek to prime the security interests and DIP
Liens (as defined below) provided to the DIP Lender under this Final Order by offering a
subsequent lender or a party-in-interest a superior or *pari passu* lien or claim pursuant to Section
364(d) of the Bankruptcy Code or otherwise.

   E. **Findings Regarding the Post-Petition Financing**.

    (i) **Need for Post-Petition Financing**.  An immediate need exists for the
Debtor to obtain funds from the DIP Facility in order to allow for the payment upon, and

restructuring of, the Installment Agreement. The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors and equity holders and the possibility for a successful reorganization or sale of the Debtor's assets as a going concern or otherwise.

(ii)   **No Credit Available on More Favorable Terms**. The Debtor has been unable to obtain unsecured credit allowable under Bankruptcy Code Section 503(b)(1) as an administrative expense. The Debtor is also unable to obtain secured credit, allowable only under Bankruptcy Code Sections 364(c)(2) on more favorable terms and conditions than those provided in the DIP Loan Agreement and this Final Order. The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lenders the DIP Protections (as defined below). The restructuring of the Installment Agreement will "right size" the Debtor's debt structure, which will in turn permit the restructuring and potential disposition of the Hotel at a higher price to the benefit of the Debtor's creditor constituencies.

F.   **Section 506(c) Waiver**. The DIP Lenders have requested a waiver of the provisions of Section 506(c) of the Bankruptcy Code as part of the DIP Facility. The Debtor has agreed to grant such waiver pursuant to this Final Order.

G.   **Use of Proceeds of the DIP Facility**. Proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Agreement. In the case of the Term Loan, the proceeds of the DIP Facility shall be used solely for payment upon, and restructuring of, the Installment Agreement. In the case of the Revolving Loan, the

6

proceeds of the DIP Facility shall be used solely to fund costs related to the continuing operations of the Hotel consistent with the Budget.

      H.    **Application of Proceeds of Collateral**.  All proceeds of the sale or other disposition of the Collateral (as defined below) shall be applied to reduce the DIP Obligations in accordance with the DIP Loan Agreement in accordance with this Final Order.  Such payment will not prejudice the Debtor or its estate, because payment of such amounts is subject to the rights of parties-in-interest under Paragraph 5 of this Final Order.

      I.    **Extension of Financing**.  The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Loan Agreement and subject to (i) the entry of this Final Order, and (ii) findings by the Bankruptcy Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Final Order and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Final Order, or any other order, as provided in Section 364(e) of the Bankruptcy Code.

      J.    **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility and the DIP Loan Agreement, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and at arms' length between the Debtor and the DIP Lender.  Use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business

7

purposes and uses, the consequence of which is that the DIP Lender is entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code.

K. **Relief Essential; Best Interest**. The relief requested in the DIP Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and personal property. It is in the best interest of Debtor's estate to be allowed to establish the DIP Facility contemplated by the DIP Loan Agreement.

L. **Entry of Final Order**. For the reasons stated above, the Debtor has requested immediate entry of this Final Order and waiver of any of the stay provisions of Bankruptcy Rule 6004(h)

**NOW, THEREFORE**, on the DIP Motion of the Debtor and the record before this Court with respect to the DIP Motion, and with the consent of the Debtor and the DIP Lender to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted**. The DIP Motion is granted in its entirety in accordance with the terms and conditions set forth in this Final Order and the DIP Loan Agreement.

2. **DIP Loan Agreement**.

(a) **Approval of Entry Into DIP Loan Agreement**. The DIP Loan Agreement, entered into by the Debtor pursuant to the Interim Order, is hereby approved on a final basis, and shall represent the valid and binding obligation of the Debtor enforceable against the Debtor in accordance with its terms.

(b) **Authorization to Borrow**. The Debtor's borrowing of Four Million Five Hundred Thousand and No/100 Dollars ($4,500,000.00) under the Term Note pursuant to the

Interim Order is hereby authorized on a final basis. In order to enable the Debtor to continue to operate its business during the Final Period and subject to the terms and conditions of this Final Order, the DIP Loan Agreement, and the documents comprising the DIP Facility, the Debtor is hereby authorized under the DIP Facility to request extensions of credit up to a total committed principal amount of Two Million and No/100 Dollars ($2,000,000.00) under the Revolving Note, in accordance with the terms and conditions of the DIP Loan Agreement.

(c)     **Application of DIP Proceeds**. The Debtor is authorized to borrow under the DIP Facility, and the proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Agreement. In the case of the Term Loan, the proceeds shall be used solely for the payment upon, and restructuring of, the Installment Agreement. In the case of the Revolving Loan, the proceeds shall be used solely to fund costs related to the continuing operations of the Hotel consistent with the Budget.

(d)     **Conditions Precedent**. The DIP Lender shall have no obligation to make any loan or advance under the DIP Loan Agreement during the Final Period unless the conditions precedent to make such loan or advance under the DIP Loan Agreement have been satisfied in full or waived by the DIP Lender in its sole discretion.

(e)     **Post-Petition Liens**. Effective immediately, upon the entry of this Final Order, the DIP Lender is hereby granted pursuant to sections 361, 362, and 364(c)(2) of the Bankruptcy Code, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and liens (collectively, the "DIP Liens"), senior and superior in priority to all other secured and unsecured creditors of the Debtor's estate upon and to all unencumbered property of the Debtor (collectively, the "Collateral"), except as otherwise provided in this Final Order,:

9

(f)     **DIP Lien Priority**.  The DIP Liens to be created and granted to the DIP Lender, as provided herein, (a) are created pursuant to section 364(c)(2) of the Bankruptcy Code, (b) are valid, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any of the Collateral subject only to the Carve Out and (c) shall secure all DIP Obligations.  The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Case; and shall be valid and enforceable against any trustee appointed in the Case, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code or in any other proceeding related to any of the foregoing (any "Successor Case"), and/or upon the dismissal of the Case.  The DIP Liens shall not be subject to Section 506(c), 510 or 549 of the Bankruptcy Code.

(g)     **Enforceable Obligations**.  The DIP Loan Agreement shall constitute and evidence the valid and binding obligations of the Debtor, enforceable against the Debtor, its estate, and any successors thereto and the Debtor's creditors, in accordance with its terms.

(h)     **Protection of DIP Lender and Other Rights**.  The DIP Lender shall have no obligation to make any extension of credit pursuant to the DIP Facility or the DIP Loan Agreement unless all of the conditions precedent to the making of such extension of credit under the DIP Facility or the DIP Loan Agreement have been satisfied.  From and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Loan Agreement and this Final Order.

(i)     **Superpriority Administrative Claim Status**.  Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "DIP Super-Priority Claim" and, together with the DIP Liens, the "DIP Protections") with priority (except as otherwise provided in paragraph 6 below) in the Case under Sections 364(c)(1),

10

503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims
and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any
kind or nature whatsoever including, without limitation, administrative expenses of the kinds
specified in, arising, or ordered pursuant to Sections 105, 326, 328, 330 (except as otherwise
provided in paragraph 6 below), 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d),
726(b), 1113, and 1114 of the Bankruptcy Code, whether or not such expenses or claims may
become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than
the Carve Out, no costs or expenses of administration, including, without limitation, professional
fees allowed and payable under Bankruptcy Code Sections 328, 330, and 331, or otherwise, that
have been or may be incurred in this proceeding, or in any Successor Case, and no priority
claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP
Obligations, or with any other claims of the DIP Lender arising hereunder.

      3.    **Authorization to Use Proceeds of DIP Loan Agreement**.

      (a)    The Debtor's use of the advances under the Term Note, pursuant to the
Interim Order, the DIP Facility and the DIP Loan Agreement, is hereby authorized on a final
basis. Pursuant to the terms and conditions of this Final Order, the DIP Facility and the DIP
Loan Agreement, filed of record in the Case and introduced into evidence at the Interim Hearing,
the Debtor is authorized to use the advances under the DIP Loan Agreement, up to a total
committed principal amount of Two Million and No/100 Dollars ($2,000,000.00) under the
Revolving Note, immediately after the entry of the Final Order and terminating upon the earlier
to occur of (x) notice being provided by the DIP Lender to the Debtor that an Event of Default
(as defined below) has occurred and is continuing, or (y) the termination of the DIP Loan
Agreement. The Debtor shall be required always to comply with the DIP Loan Agreement

11

pursuant to the terms of the DIP Facility. Nothing in this Final Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Loan Agreement.

(b)     **Adequate Protection Upon Sale of Collateral**. Upon the sale of any Collateral pursuant to section 363 of the Bankruptcy Code, any such Collateral shall be sold free and clear of any and all liens; provided, however, such liens including the DIP Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Final Order and the DIP Loan Agreement and all such proceeds shall be paid to the DIP Lender in cash at the closing on any such sale.

4.     **Post-Petition Lien Perfection**. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or credit card agreement) to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file such financing statements, mortgages, collateral assignments, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of Section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, collateral assignments, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the entry of the Interim Order. The Debtor shall execute and deliver to the DIP Lender the Assignment, the UCC financing statements, the collateral assignments, and all such notices and other documents as the DIP

12

Lender may reasonably request to evidence, confirm, validate, or perfect, or to insure the contemplated priority of, the DIP Liens granted pursuant hereto.   The DIP Lender, in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

     5.     **Intentionally Omitted.**

     6.     **Carve Out.**   The DIP Protections are subject and subordinate only to the following (collectively, the "Carve Out"): (a) allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6) (the "U.S. Trustee Fees"); (b) allowed reasonable fees and expenses of attorneys and financial advisors employed by the Debtor pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "Case Professionals"); and (c) the amounts due to MHJV pursuant to the Installment Agreement. For purposes of clause (b), (i) if at the time of reference, an Event of Default has not occurred, the amount of the Carve Out shall not be limited, except that no payment may be made to any Case Professional except as authorized by order of the Bankruptcy Court allowing such payment, and (ii) if at the time of reference, an Event of Default has occurred and is continuing, the amount of the Carve Out (the "Carve Out Amount") shall be limited to $500,000.00 plus, as of the date of the first occurrence of such Event of Default, the lesser of (a) any fees and expenses of Case Professionals that have been as of that date actually incurred but have not yet been paid, and (b) the actual amount of the fees and expenses which have been incurred by the Case Professionals and allowed, but remain unpaid; provided in each case such fees and expenses are ultimately approved by the Bankruptcy Court, or such lesser amount as so approved.   The DIP Lender shall fund the Carve Out upon the occurrence of an

CHICAGO:2540185.2
ID:MMSM

Event of Default. Any and all payments made by the DIP Lender pursuant to the Carve Out shall be immediately added to and included as part of the outstanding principal balance of the DIP Facility. So long as no Event of Default (as defined below) has occurred, the Debtor shall be permitted to pay fees, compensation, and reimbursement of expenses allowed and payable (including any such fees and expenses that are accrued but unpaid and ultimately allowed) under Bankruptcy Code Sections 330, 331, and/or 503, as the same may be due and payable. The Carve Out shall exclude any fees and expenses (x) incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses, or other contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief (A) invalidating, challenging, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, or (ii) the DIP Liens in the Collateral, or (B) preventing, hindering, or delaying, whether directly or indirectly, the DIP Lender's assertions or enforcement of its liens, security interest, or realization upon any Collateral, (y) in seeking to use or, using cash collateral of the DIP Lender to sell or otherwise dispose of any other Collateral, or incur any indebtedness not permitted under the DIP Loan Agreement, without the DIP Lender's express written consent, or (z) arising after the conversion of any of the chapter 11 case to a case under chapter 7 of the Bankruptcy Code. The DIP Lender reserves the right to object to the professional fees and nothing herein shall be construed to obligate the DIP Lender, in any way, to pay the professional fees or to assure that the Debtor has sufficient funds on hand to pay any professional fees.

7.      **Payment of Compensation.**  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the Debtor or of any person, or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses.

14

8.      **Section 506(c) Claims**.  No costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the DIP Lender, its claims, or the Collateral, pursuant to Sections 105, 506(c), or 552 of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.  Nothing contained in this Final Order shall be deemed a consent by the DIP Lender to any charge, lien, assessment, or claim against the Collateral under Section 506(c) of the Bankruptcy Code or otherwise.

9.      **Collateral Rights**.  Unless:  (a) the DIP Lender has provided its prior written consent; (b) all DIP Obligations have been indefeasibly paid in full in cash (or will be indefeasibly paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below); or (c) all commitments to lend have terminated, there shall not be entered in this proceeding, or in any Successor Case, any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Lender.

10.     **Proceeds of Subsequent Financing**.  Without limiting the provisions and protections of Paragraph 9 above, if at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Lender's obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any chapter 11 plan or plans (the "Plan"), the Debtor, the Debtor's estate, any trustee or any examiner with enlarged powers or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to Bankruptcy Code Sections 364(b), 364(c), or 364(d) in violation of the DIP Loan Agreement,

15

then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender to be applied in reduction of the DIP Obligations.

11.    **Termination Date**.  All (a) DIP Obligations of the Debtor to the DIP Lender shall be immediately due and payable, and (b) authority to use the proceeds of the DIP Loan Agreement shall cease on the date (the "Termination Date") that is the earliest to occur of: (i) September 30, 2011, (ii) the occurrence of an Event of Default (as defined in the DIP Loan Agreement), or (iii) the sale of all or substantially all the assets of the Debtor.

12.    **Payment from Proceeds of Collateral**.  All products and proceeds of the Collateral (including, for the avoidance of doubt, proceeds from accounts receivable and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions of Collateral, whether or not in the ordinary course) regardless of whether such Collateral came into existence prior to the Petition Date shall be remitted directly to the DIP Lender for application to the DIP Obligations outstanding pursuant to the DIP Loan Agreement.

13.    **Disposition of Collateral**.  The Debtor shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the Collateral, or assume, reject, amend or assign any interest in the Installment Agreement without the prior written consent of the DIP Lender (and no such consent shall be implied, from any other action, inaction, or acquiescence by the DIP Lender) or an order of the Bankruptcy Court, except for sales of the Debtor's inventory in the ordinary course of business or except as otherwise provided for in the DIP Loan Agreement and this Final Order and as approved by the Bankruptcy Court.

14.    **Events of Default**.  The occurrence of any of the following events shall constitute an event of default ("Event of Default") under this Final Order:

(a)    failure by the Debtor to comply with any term of this Final Order;

16

(b)     the occurrence of the Termination Date; or

(c)     entry of an order by the Bankruptcy Court dismissing the Debtor's Case without the consent of the DIP Lender; or

(d)     any other Event of Default as defined in the Loan Agreement.

Unless and until the DIP Obligations have been indefeasibly repaid in full, all commitments to lend have irrevocably terminated, and all DIP Obligations which survive such termination have been cash secured to the reasonable satisfaction of the DIP Lender, the protections afforded to the DIP Lender pursuant to this Final Order and under the DIP Loan Agreement, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting this Case into a Successor Case, and the DIP Protections shall continue in this proceeding and in any Successor Case, and such DIP Protections shall maintain their priority as provided by this Final Order.

15.     **Rights and Remedies Upon Event of Default**.

(a)     Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that after the occurrence of any Event of Default and at any time thereafter upon five (5) business days prior written notice of such occurrence, in each case given to the Debtor and the U.S. Trustee, the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Loan Agreement. Immediately following the giving of notice by the DIP Lender of the occurrence of an Event of Default: (i) the Debtor shall continue to deliver and cause the delivery of the proceeds of Collateral to the DIP Lender as provided in the DIP Loan Agreement and this Final Order for application in accordance with the terms and conditions of the DIP Loan Agreement and this Final Order, (ii) the DIP Lender shall continue to apply such proceeds in accordance with the provisions of this Final Order and of the DIP Loan Agreement,

17

(iii) the Debtor shall have no right to use any of such proceeds other than towards the DIP Obligations and the Carve Out, and (iv) except with respect to the Carve Out, any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtor pursuant to the DIP Facility shall be suspended. Following the giving of notice by the DIP Lender of the occurrence of an Event of Default, the Debtor shall be entitled to an emergency hearing before the Bankruptcy Court solely for the purpose of contesting whether an Event of Default has occurred. If the Debtor does not contest the right of the DIP Lender to exercise their remedies based upon whether an Event of Default has occurred within such time period, or if the Debtor does timely contest the occurrence of an Event of Default and the Bankruptcy Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Lender, shall automatically terminate at the end of such notice period.

(b) If the DIP Lender exercises any of its rights and remedies upon the occurrence of an Event of Default, the DIP Lender may retain one or more persons to sell, lease, or otherwise dispose of the Collateral. In any exercise of its rights and remedies upon an Event of Default under the DIP Loan Agreement, the DIP Lender is authorized to proceed under or pursuant to the DIP Loan Agreement.

(c) Without limiting the foregoing, in the exercise of the DIP Lender's rights and remedies upon Event of Default:

      (i) the DIP Lender may by written notice to the Debtor require the Debtor to file a motion seeking to retain one or more persons to sell, lease, or otherwise dispose of the Collateral on terms acceptable to the DIP Lender. The Debtor shall file such motion within ten (10) days of the DIP Lender's request and shall diligently prosecute such motion. If the Debtor fails to so file the motion, the DIP Lender may file and prosecute such a motion in the name of the Debtor; and/or

      (ii) the DIP Lender may by written notice to the Debtor require the Debtor to file a motion or motions seeking to sell, assume, assign, or otherwise dispose of any or all of the real estate (including, without limitation, the

18

Installment Agreement) of the Debtor pursuant to Sections 363 and 365 of the Bankruptcy Code, on terms acceptable to the DIP Lender. The Debtor shall file such motion or motions within ten (10) days of the DIP Lender's request and shall diligently prosecute such motion(s). If the Debtor fails to so file such motion(s), the DIP Lender may file and prosecute such motion(s) in the name of the Debtor; and/or

(iii)    the DIP Lender may proceed under or pursuant to the DIP Loan Agreement.

All proceeds realized from any of the foregoing shall be turned over to the DIP Lender for application to the Carve Out, the DIP Obligations, and in accordance with the provisions of, the DIP Loan Agreement, and this Final Order.

(d)    The automatic stay imposed under Bankruptcy Code Section 362(a) is hereby modified pursuant to the terms of the DIP Loan Agreement as necessary to (1) permit the Debtor to grant the DIP Liens and to incur all liabilities and obligations to the DIP Lender under the DIP Loan Agreement and this Final Order, and (2) authorize the DIP Lender to retain and apply payments hereunder.

(e)    Nothing included herein shall prejudice, impair, or otherwise affect the rights of the DIP Lender to seek any other or supplemental relief in respect of the Debtor, nor the rights of the DIP Lender, as provided in the DIP Loan Agreement, to suspend or terminate the making of loans under the DIP Loan Agreement.

16.    **Proofs of Claim**.  The DIP Lender will not be required to file proofs of claim in the Case or any Successor Case with respect to the DIP Loan.

17.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code.   No Modification or Stay of this Final Order**.  Based on the findings set forth in this Final Order and in accordance with Section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Final Order, in the event any or all of the provisions of this Final

19

Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, the DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code and no such modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or lien or priority authorized or created hereby. Notwithstanding any such modification, amendment, or vacation, any claim granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Final Order and the DIP Loan Agreement, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP Protections granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Loan Agreement are made in reliance on this Final Order, the obligations owed the DIP Lender prior to the effective date of any stay, modification, or vacation of this Final Order cannot, as a result of any subsequent order in the Case, or in any Successor Case, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Final Order and/or the DIP Loan Agreement.

(b)     **Expenses**.   As provided in the DIP Loan Agreement, all costs and expenses of the DIP Lender in connection with the DIP Loan Agreement, including, without limitation, reasonable, documented legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket costs and expenses will be paid by the Debtor, whether or not the transactions contemplated hereby are consummated. Payment of such fees shall not be subject to allowance by the Bankruptcy Court.

20

(c)    **Binding Effect**.  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Lender, the Debtor and its successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in the Case, in any Successor Case, or upon dismissal of any such Case or Successor Case.

(d)    **No Waiver**.  The failure of the DIP Lender to seek relief or otherwise exercise their rights and remedies under the DIP Loan Agreement, the DIP Facility, or this Final Order, as applicable, shall not constitute a waiver of any of the rights of the DIP Lender hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (1) the rights of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Case to a case under Chapter 7, dismissal of the Case, or the appointment of a trustee in the Case (but only in the event an Event of Default has occurred and is continuing), or (ii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Plan; or (2) any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

(f)    **No Marshaling**.  The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral.

(g)    **Amendment**.  The Debtor and the DIP Lender may amend any provision of the DIP Loan Agreement, provided that such amendment, in the judgment of the Debtor and

21

the DIP Lender, is either nonprejudicial to the rights of third parties or is not material. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of the Debtor and the DIP Lender (after having obtained the approval of the DIP Lender as provided in the DIP Loan Agreement) and approved by the Bankruptcy Court.

(h)    **Survival of Final Order**.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Case, or (ii) converting the Case to a case under chapter 7 of the Bankruptcy Code, or (iii) dismissing the Case, or (iv) withdrawing of the reference of the Case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of this Case in this Court, and the terms and provisions of this Final Order as well as the DIP Protections granted pursuant to this Final Order and the DIP Loan Agreement shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections shall maintain their priority as provided by this Final Order until all the obligations of the Debtor to the DIP Lender pursuant to the DIP Loan Agreement have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms). The Debtor shall not propose or support any Plan that is not conditioned upon the payment in full in cash of all of the DIP Obligations, on or prior to the earlier to occur of (i) the effective date of such Plan and (ii) the Termination Date.

(i)    **Inconsistency**.  In the event of any inconsistency between the terms and conditions of the DIP Loan Agreement and of this Final Order, the provisions of the DIP Loan Agreement shall govern and control.

22

(j)    **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable nun pro tunc to the Petition Date immediately upon entry hereof.

(k)    **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(l)    **No Waivers or Modification of Final Order**.  The Debtor irrevocably waives any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Lender and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lender.

(m)    **Waiver of the Ten (10) Day Stay Under Bankruptcy Rule 6004(h)**.  The ten (10) day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this Final Order.

(n)    **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: November 4, 2008
Chicago, Illinois

UNITED STATES BANKRUPTCY JUDGE

23